UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA  DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO.  8:08-CR-152-T-27MAP

LUIS AGUSTIN CAICEDO-VELANDIA,
        a/k/a "Don Luis",
        a/k/a "Don Lucho"


**NOTICE OF MAXIMUM PENALTY, ELEMENTS OF OFFENSE,
PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS ELEMENTS**

The essential elements for violations of Title 21, United States Code, Sections

959 and 963 (Count One) and Title 46, United States Code, Sections 70503(a) and

70506(a) and (b) (Count Two) of the Superseding Indictment, are as follows:

> First:        That two or more persons in some way or manner, came to
>               a mutual understanding to try to accomplish a common and
>               unlawful plan, as charged in the Superseding Indictment;
>
> Second:       That the defendant knowingly and willfully joined in the
>               conspiracy on one or more occasions.

The essential elements for violations of Title 21, United States Code, Section

848(a) (Count Three) of the Superseding Indictment, are as follows:

> First:        That the defendant committed felony violations of the federal
>               narcotics laws,
>
> Second:       That such violations were part of a continuing series of
>               violations of the federal narcotics laws,
>
> Third:        That such continuing series of violations were undertaken by the
>               defendant in concert or together with at least five (5) or more other
>               persons with respect to whom the defendant occupied the position
>               of organizer, supervisor or manager, and
>
> Fourth:       That the defendant obtained substantial income or resources for
>               the continuing series of violations.

The essential elements for violations of Title 46 Appendix, United States Code, Sections 1903(a) (Counts Four and Five) of the Superseding Indictment are as follows:

First:        That the Defendant was on board a vessel subject to the jurisdiction of the United States,.

Second:     That the defendant knowingly and willfully possessed cocaine as charged.

Third:       That the Defendant possessed it with the intent to distribute it.

Further, under Apprendi v. New Jersey, 530 U.S. 466 (2000), in order for a maximum sentence of life to be applicable to Counts One, Two, Three, Four and Five, the United States must prove, beyond a reasonable doubt, that the offenses alleged in those counts involved 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine.

## PENALTIES

The offenses charged in Counts One, Two, Four and Five of the Superseding Indictment involve more than five (5) kilograms of cocaine, and, accordingly, carry a minimum mandatory sentence of ten (10) years and a maximum penalty of life, a fine of up to four (4) million dollars, a term of supervised release of at least five (5) years and a special assessment of one hundred dollars, for each Count, said special assessment to be due at the time of sentencing.

The offense charged in Count Three of the Superseding Indictment involves five (5) kilograms or more of cocaine, and, accordingly, carries a minimum mandatory sentence of twenty (20) years and a maximum penalty of life, a fine of up to two (2) million dollars, a term of supervised release of at least five (5) years and a special assessment of one hundred dollars, said special assessment to be due at the time of sentencing.

**FACTUAL BASIS**

Throughout the time period alleged, the defendant agreed with his co-defendants and other co-conspirators to possess with intent to distribute and distribute more than five kilograms of cocaine in Colombia.  In furtherance of this agreement the defendant utilized commercial fishing and go-fast vessels to transport cocaine from the west and north coasts of Colombia to Central America and elsewhere for ultimate importation and distribution in the United States.

Beginning in September 2000 and continuing up to and including April 15, 2010, the defendant was a leader in a drug trafficking organization responsible for the importation of tons of cocaine into the United States.  During that time period the defendant participated in the charged conspiracies by arranging for cocaine to be produced and delivered to transportation cells on the north and west coasts of Colombia.  The defendant would then arrange for the transportation of the cocaine by maritime conveyance to Central America, for delivery to Mexican traffickers and importation into the United States.  The drug trafficking organization involved far in excess of five people, including but not limited to: Ulises Malkun-Bernades, Leonel Iguaran-Gonzalez, Javier Fernando Saavedra-Escobar, Raymundo Coneo-Rios, Hernando Coneo and Ricardo Coneo.  The total amount of cocaine distributed by the defendant and his organization is in excess of 50,000 kilograms.  For his participation in the charge drug trafficking offenses, the defendant received in excess of hundreds of millions of dollars in drug proceeds.

The defendant was responsible for the following interdictions in the course of the charged offenses:

On October 21, 2004, USCGC Gallatin interdicted a go-fast vessel approximately 42 nautical miles east of Roncador Cay, Colombia and subsequently arrested five crew members after they jettisoned 68 bales of cocaine (approximately 1700 kilograms)

overboard.  All crew members were brought to the United States through the Middle District of Florida and eventually pleaded guilty.

On January 25, 2005, the USCGC Bear interdicted a go-fast vessel in international waters in the Caribbean Sea.  The USCGC Bear deployed a HITRON helicopter, which used warning shots and disabling fire to stop the go-fast vessel.  The USCGC Bear recovered 74 bales of cocaine (1428 kilograms) jettisoned by the go-fast vessel.  The go-fast crew entered the United States through the Middle District of Florida.

On April 16, 2005, a go-fast vessel was identified by patrol aircraft in the Carribean approximately 68 nautical miles northwest of Cartagena, Colombia.  The USS Doyle helicopter was launched and gave pursuit.  The bales of cocaine on board were jettisoned.  The vessel was eventually stopped with warning shots. Six crew members were detained and seventy-seven bales containing 1905 kilo packages were recovered from the debris field.  All crew members entered the United States in the Middle District of Florida and eventually pleaded guilty.

On June 9, 2005, USCG assets located a go-fast vessel dead in the water approximately 17 nautical miles northeast of the Serrana Bank, Colombia.  A USCG helicopter was dispatched. As the helicopter closed on the vessel, the vessel attempted to evade.  Crew members were observed slashing open bales of cocaine, lighting them on fire and jettisoning them overboard.  Disabling fire was used to stop the vessel and the five crewmembers were detained.  USCG personnel seized 69 bales containing 1833 kilo packages of cocaine.  The cocaine weighed 1848 kilograms.  All crew members entered the United States in the Middle District of Florida and eventually pleaded guilty.

On August 16, 2005, the USCGC Venturous interdicted the Colombian flagged M/V MR. SIMON with approximately 2,850 kilograms of cocaine and six (6) crew

members coordinates 11-24.5 N, 078-10.5 W.  The six crewmembers were detained and prosecuted in the Middle District of Florida.

On October 21, 2005, the British Navy, in conjunction with the U.S. Coast Guard, located a 30-foot center console "Eduardono" go-fast type vessel with four outboard engines in international waters, at approximate latitude/longitude position 10-48 north and 081-30 west.  Upon detection, the four crew members began while jettisoning several small and unknown items overboard.  Eighty-eight packages of contraband, weighing approximately 1.9 tons, were seized. The four crewmembers were prosecuted in the Middle District of Florida.

On December 1, 2005, the United States Coast Guard (USCG) encountered a stateless go-fast vessel, in international waters, approximately 70 miles Northeast of Panama. A subsequent interdiction of the stateless go-fast vessel resulted in the apprehension of four (4) crew members and the seizure of approximately 2,860 pounds (1300 kilos) of cocaine.  The four crewmembers were prosecuted in the Middle District of Florida.

In addition to the interdicted smuggling events, the defendant successfully organized dozens of successful maritime smuggling ventures involving multi-ton quantities of cocaine from Colombia to Central America for importation into the United States, including the Middle District of Florida, from 2000 through April 2010.

Since the defendant's appearance in the Middle District of Florida, the defendant voluntarily assisted in the location and surrender of over $104 million in drug proceeds in Colombia and an additional $9 million dollars in Tampa, Florida.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By:   */s/Joseph K. Ruddy*
JOSEPH K. RUDDY
Assistant United States Attorney
USA No. 037
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6338
Facsimile:   (813) 274-6125
Email:        joseph.ruddy@usdoj.gov

**U.S. v. LUIS AGUSTIN CAICEDO-VELANDIA          CASE NO. 8:08-CR-152-T-27MAP**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 12, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jay White, Esq.

_/s/Joseph K. Ruddy_

JOSEPH K. RUDDY
Assistant United States Attorney
USA No. 037
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6338
Facsimile:   (813) 274-6125
Email:       joseph.ruddy@usdoj.gov