UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                         CASE NO.: 8:08-Cr-152-T-27-MAP

LUIS AUGUSTIN CAICEDO-VALENDIA,

    Defendant.
_____/

**DEFENDANT'S OMNIBUS
SENTENCING MEMORANDUM**

COMES NOW the Defendant, LUIS AUGUSTIN CAICEDO-VALENDIA, by and through his undersigned counsel and hereby files this, his sentencing memorandum and as grounds therefore would state as follows:

1. That on April 13, 2011 this Defendant appeared before United States Magistrate Judge Mark Pizzo and entered a guilty plea as to all five counts of the superseding indictment (DE #6) without the benefit of a plea agreement with the government. (DE #45) On the same date, Magistrate Judge Pizzo issued a report which, in its material part, recommended that the plea be accepted. (DE #48)

2. The superseding indictment (DE #6) generally charged the defendant with conspiracy to import cocaine, conspiracy to possess with the intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, engaging in a continuing criminal enterprise, and two substantive counts of possession with the intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States. The indictment also contained a forfeiture count that will be discussed in

-1-

greater detail below.

3. On May 11, 2011 United States District Judge James Whitmore adopted the report of the magistrate judge, accepted the defendant's plea and set sentencing in this matter for *Monday, July 11, 2011 at 1:30 p.m. in Tampa*.

### *Variances Generally*

In the recent case of Pepper vs. United States 131 S.Ct. 1229 (2011), the United States Supreme Court emphasized the need for individualized sentencing based not only on the crime but on the defendant. In United States vs. Booker, 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are *advisory* **only**, not mandatory. The other factors set forth in 18 U.S.C. § 3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. Booker, 125 S.Ct. at 764; see also Gall vs. United States, 552 U.S. 38 (2007) ; Kimbrough vs. United States, 552 U.S.

85 (2007).

After *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable. United States vs. Williams, 435 F.3d 1350 (11th Cir. 2006)

In rendering the Sentencing Guidelines advisory, Booker established a new independent limit on sentences that may be imposed. The primary sentencing mandate of §3553(a) states that a court must impose a minimally sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, and rehabilitation are set forth in the beginning sentence where it states that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

"Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." United States vs. Garcia, 497 F.3d 964, 971-72 (9th Cir. 2007). Therefore, a sentencing judge could well conclude that a . . . discouraged factor did not quite justify a departure from the guidelines . . . but might justify a somewhat shorter sentence under a reasonableness standard. United States vs. Thurston 456 F.3d 211 (1st Cir. 2006)

### *Sentencing Disparity*

It is quite a simple analysis in assessing whether sentences are disparate is difficult in a case involving a large amount of drugs and more difficult in cases where

there is a motion pursuant to §5K1.1 of the guidelines filed at sentencing. Comparing similarly situated defendant in the same case is an easy task for a sentencing court. The comparisons of disparate sentences in a CCE case are quite unique.

Among the factors a district court must consider in imposing a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6) See also <u>United States vs. Arevalo-Juarez</u>, 464 F.3d 1246 (11th Cir. 2007) Sentencing disparities are unfair both to offenders and to the public. Disparities can be traced directly to the unfettered discretion the law confers on those judges and parole authorities responsible for imposing and implementing the sentence. <u>Pepper vs. United States</u> 131 S.Ct. 1229, 1253 (2011)

In this district, the closest example to the situation of the defendant to be of guidance to the court is that of Pedro Navarette. Mr. Navarette was indicted in this district in Case No.: 98-CR-154-T-24TGW. It was prosecuted for the government by Assistant United States Attorney Joseph Ruddy, the same prosecutor as in this case. By way of brief description, Mr. Navarette was described as "assuming control of the organization" which specialized in smuggling cocaine into the United States in May 1995. (DE #198) The organization appears to have included members of the North Valley and Cali cartels. In Count Three of that indictment that was assigned to Judge Bucklew, Mr. Navarette was charged with CCE. On May 27, 2003 Mr. Navarette was extradited to the United States and made his initial appearance at court in Tampa. Just as in this case, the defendant pled guilty to the indictment (including

the CCE charge) without the benefit of a plea agreement before the Magistrate Judge Wilson. (DE #375) Judge Bucklew ultimately accepted the guilty plea. (DE #400)

Nearly three years after the defendant's guilty plea was accepted and after seven (7) motions to continue the sentencing due to the defendant's ongoing cooperation, on December 19, 2006 sentencing was finally held. Mr. Navarette's guideline range was the same as this defendant[1] to wit, 262-327 months based on a total offense level of 39 and no criminal history. (See DE #634) After granting the government's motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure, the ten level reduction brought him to a level 29 which made his guidelines 87-108 months and he was sentenced to the 87 months. A copy of the Rule 35 is attached hereto. The factors for the §5K1.1 reduction for this defendant are more extensive since Mr. Navarette did not forfeit any of his drug proceeds.

Cases within this circuit have held that a defendant who cooperates with the government is not similarly situated with one who has not cooperated, and thus there is no unwarranted sentence disparity between such codefendants when they receive sentences of different lengths. United States vs. Rosell, 2011 WL 2438956 (11th Cir. June 20, 2011); United States vs. Docampo, 573 F.3d 1141, 1101 (11th Cir. 2009). The cooperation of both Mr Navarette and the defendant herein can be considered both extensive and remarkable and worthy of a substantial reduction in order to justify both their sentences and to avoid an unwarranted disparity.

---

[1] The offense levels are the same but for the government seeking the "firearm enhancement" and the enhancement for the use of non-commercial aircraft.

### *"Super" Acceptance of Responsibility*

Generally, §3E1.1 provides for a two level decrease in the offense level if the defendant clearly demonstrates acceptance of responsibility for his offense. Subsection (b) permit the reduction of an additional level if the acceptance is done in a timely manner and the offense level is 16 or greater.

While the defendant took extraordinary steps to assist the government with the location of significant assets of the organization in excess of $100 million which will be further discussed below and at the sentencing allocution, this case clearly shows the typical mathematical reduction of three points for acceptance of responsibility is insufficient and the court should vary downward for the defendant's "super" acceptance of responsibility.

A review of the cases show that this ground for variance has not yet been applied to forfeiture, extraordinary restitution in a pre-Booker context has been found to be grounds for a downward departure in this circuit where the reduction for acceptance of responsibility called for under the guidelines was inadequate.

In <u>United States vs. Kim</u>, 364 F.3d 1235 (11th Cir. 2004), the court held that $280,000 restitution payments made by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, was extraordinary enough to remove the case from heartland and justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution; defendants'

conduct demonstrated their sincere remorse and acceptance of responsibility. The Kim court found that the §5K2.0 departure was appropriate and therefore it is also applicable to a variance situation. See also United States vs. Miller, 991 F.2d 552 (9th Cir. 1993) where voluntary restitution exhibiting extraordinary acceptance of responsibility can justify a downward departure.

In the area of forfeiture of property, prior to the Booker decision, the Third Circuit dealt with issues of extraordinary forfeiture. Obviously the amount of the forfeiture in this case combined with the extraordinary efforts of the defendant are and will be highlighted in the defense presentation of this issue. However, aside from disclosing the location of the money where defendant foregoes meritorious defenses to the forfeiture may show extraordinary acceptance of responsibly which could warrant a departure. United States v. Faulks, 143 F.3d 133, 138 (3rd Cir. 1998).

### *Extreme Remorse*

Surely any defendant that appears in federal court and pleads guilty expresses remorse for their offense. In an every day occurrence, federal courts throughout the United States listen to defendants allocute before the imposition of sentence seeking mercy. On occasion, however, the remorse shown in advance of sentencing can justify a lesser sentence where the remorse reach an extreme level.

For example, in United States vs. Stall 581 F.3d 276 (6th Cir. 2009), which was a child pornography case where the guideline range was 57-71 months, the district court's sentence of 1 day in jail, 10 years supervised release, and one year house arrest, was not found not to be unreasonable on appeal. The appellate court found,

in part, because of defendant's exceptional expression of remorse at the time of his arrest and thereafter, immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation.

The theory behind this reduction was best expressed in <u>United States vs. Milne</u>, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005), where the district judge explained that the three level reduction is ordinarily and routinely granted to defendants who timely plead guilty but the guidelines do not otherwise account for greater expressions of remorse.

The defendant here cannot un-ring the bell of his criminal activity but his extraordinary efforts in assisting law enforcement in the discovery, recovery and consent to forfeiture of $114,000,000 is well beyond the typical *mea culpa* that courts hear on a daily basis. While both §5K1.1 of the guidelines and Rule 35 of the Federal Rules of Criminal Procedure reward a defendant's substantial assistance in the investigation and/or prosecution of another, the extraordinary acts of assisting the government in the location and recovery of such a massive amount of money is dwarfed by the typical three level reduction permitted under §3E1.1 of the guidelines. Easily the defendant could have provided the garden variety "lip service" cooperation that would have ensnared his coconspirators. However, this extraordinary showing of pro-active remorse by assisting and locating forfeitable assets in excess of $100,000,000 cannot be recognized and encouraged absent a variance.

Sentencing courts can and should impose a sentence that encourages pre-sentence restitution or as in the case, the presentence location of significant assets

subject to forfeiture. See <u>United States vs. Davis</u>, 797 F. Supp. 672 (N.D. Ind. 1992), where an 8-level downward departure was proper where defendant made $775,000 restitution voluntarily.

Sentences within the applicable guideline range have recently even been reversed and held to be unreasonable where full restitution has been paid prior to sentencing. In <u>United States vs. Paul</u>, 561 F.3d 970 (9th Cir. 2009), the defendant there had a guideline range of 10-16 months in an embezzlement case, but had paid full restitution prior to the imposition of sentence. The appellate court found that a guideline range sentence of fifteen (15) months to be unreasonable.

The Sixth Circuit has analyzed the factors necessary for extreme remorse in fraud cases and they have sought to identify the "more worthy defendants". See <u>United States vs. Davis</u>, 458 F.3d 491 (6th Cir. 2006), In order to determine who is "more worthy" that circuit developed criteria to weed out the less worthy. In this fraud context, the majority stated that to identify "more worthy defendants" deserving extreme variances, the criteria included "those [defendants] who paid restitution; those who accepted responsibility for the crime and showed remorse for committing it; those who used the time between the commission of the crime and sentencing to engage in other acts demonstrating rehabilitation; and, with respect to elderly defendants, those who had become infirm in the intervening years." See <u>Davis</u>, supra at 499. See also <u>United States vs. Camiscione</u>, 207 Fed. Appx. 631 (6th Cir. 2006).

While the case at bar is clearly not a fraud case the nuances of the matter that led to the recovery, seizure and uncontested forfeiture of in excess of $100,000,000

is the type of extreme remorse that the Sixth Circuit spoke about. While this defendant cannot erase the crimes that he stands convicted of, his extreme remorse and actions since his arrest certainly qualify him for the variance based on extreme remorse.

### *Voluntary Disclosure*

The guidelines themselves have a permissible departure pursuant to §5K2.16 as a permissible departure for the voluntary disclosure of an offense. The section reads:

> "If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted."

For example, in United States vs. DeMonte, 25 F.3d 343 (6th Cir. 1994) which was a computer fraud case, the appellate court found that the departure was proper on ground that defendant admitted to crimes about which government had no knowledge, even though plea bargain required cooperation. At the time of Mr. Caicedo Velandia's disclosure of the existence of the more than one hundred million dollars and assistance in the recovery of the money, there was no formal cooperation agreement in place.

In United States vs. Finnigan, 2007 WL 4201167 (D. Kan. 2007), the sentencing court found that a downward variance for voluntary disclosure was

warranted in a bank robbery case based upon the defendant's voluntary conduct in contacting the police, disclosing that he was wanted for robbery, and turning himself in and accepting responsibility for the robbery.

The voluntary disclosure of the existence of the large amount of money could have been easily concealed by the defendant and the applicable guideline range in his case would remain the same. The relinquishment of the funds, though a substantial portion remained in Colombia due to international law and not through the actions of the defendant, gives this court the authority to vary.

Though the bulk of the funds remain in Colombia, their voluntary disclosure has led to some good coming from the money. As the court may be aware, in December 2010 dozens of towns in Colombia were devastated due to an exceptionally wet rainy season that cause floods and landslides. According to press reports from that time, at least 174 people were killed and 19 were reported as missing. The floods destroyed more than 1,800 homes and damaged another 256,000 and more than 628 cities and towns were impacted according to the Colombian Red Cross.

With damages estimated in the hundreds of millions of dollars, according to news stories from *www.msnbc.com* (which are attached) the president of Colombia stated that he was taking $25 million in seized drug money from the $140 million seized in 2010 by anti-narcotics police for relief for the flood victims. The rich vein of funds was made up primarily of the money that was voluntarily surrendered by the defendant.

## *Full Credit for Time Served*

As noted on Page 3 of the presentence investigation report, the defendant was considered "arrested" on June 15, 2010 but was in custody in Argentina from April 12, 2010 to July 14, 2010 in a related matter. In order that the United States Bureau of Prisons may award the full credit of all of the time that the defendant has served in this and related matters, it is respectfully requested that the judgment in this case reflect this court's recommendation to the Bureau of Prisons that the defendant receive credit for time served back to and including April 12, 2010 consistent with the PSR.

## *Conditions of Confinement*

Since his initial appearance in this district, the defendant has been the subject to extraordinary conditions of confinement. For the past year he has been kept in solitary confinement and denied even the most basic necessities of typical prison life. While the government may argue that due to the defendant's cooperative posture such extraordinary measure are both prudent and necessary, the defendant has been subject to more onerous conditions of confinement than most cooperating witnesses.

The defendant has been kept in what can best be described as a "safety cell" in a local county jail which is normally used to house psychiatric patients. He has no access to television and cannot utilize the telephone (even for attorney contact) without permission. While the defendant is supposed to be afforded forty five (45) minutes per day of recreation time, in actuality he has only been afforded his recreation time three times per week on average. Therefore, for the most part, the

defendant is locked down and isolated twenty four hours a day but for attorney conferences.

Prior to the <u>Booker</u> decision, two circuits including the Eleventh Circuit have faced this issue in the much more stringent context of a downward departure. Both the Second Circuit in <u>United States vs. Carty</u>, 264 F.3d 191, 196 (2nd Cir. 2001) and our circuit in <u>United States vs. Pressley</u>, 345 F.3d 1205, 1219 (11th Cir. 2003) found sufficient facts and circumstances to take the case outside of the heartland of the applicable guidelines.

In <u>United States vs. Carty</u>, 264 F.3d 191, 196 (2nd Cir. 2001) the court found that a nine-month incarceration in the Dominican Republic where a defendant returned to his own country, incarcerated in their own penal system and claiming substandard penal practices is not prohibited from receiving a downward departure.

In this circuit, it has been held that the conditions of presentence confinement could, in the appropriate case support a motion for a downward departure since this factor was not taken into account by the United States Sentencing Commission. See <u>United States vs. Pressley</u>, 345 F.3d 1205, 1218 (11th Cir. 2003) which held that a six-year "lock down" at USP - Atlanta could support such a departure. Therefore, the defendant's lock down time is analogous to that of the defendant in <u>Pressley</u>, just not as lengthy.

While the cases cited support the proposition that extreme conditions of pretrial confinement could support a downward departure, they were also both decided prior to the Supreme Court's <u>Booker</u> decision. Therefore, the defendant would be

requesting that this court exercise its discretion and give the defendant a downward variance based on these inhumane conditions.

WHEREFORE the Defendant LUIS AUGUSTIN CAICEDO-VALENDIA respectfully requests that this court enter an order granting him a downward variance from the guideline range that this court establishes at sentencing.

Respectfully submitted,

Law Offices of White, White & Associates
The White Building - Suite 200
One Northeast Second Avenue
Miami, Florida 33132
(305) 358-1100 Telephone
(305) 358-2503 Telecopier
Email: jawhite@speakeasy.net

By: _s/Jay A. White_
JAY A. WHITE, ESQUIRE
Fla. Bar No.: 717850

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Wednesday, July 06, 2011, undersigned electronically filed this Sentencing Memorandum using CM/ECF.

By: _s/Jay A. White_
JAY A. WHITE, ESQUIRE